IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| Plaintiff, : | |
| v. : | |
| : | Civil Action No. |
| **$59,502,00 IN UNITED STATES FUNDS,** : | 5:07-CV-94 (CAR) |
| Defendant Property. : | |
| : | |
| **DeCARLOS DUNCAN; GILBERT** : | |
| **DUNCAN; and LEON DUNCAN,** : | |
| Claimants. : | |
| _____ : | |

### ORDER ON MOTION TO SUPPRESS

Currently before the Court is Claimant's Motion to Suppress [Doc. 22]. Through the present motion, Claimant's contend that evidence of the funds seized by law enforcement following a warrantless search of their vehicle should be suppressed because, at the time of the search, the officer had neither consent nor probable cause. For the reasons stated, herein, the Court disagrees. Claimant's Motion to Suppress is therefore **DENIED**.

### **FACTUAL BACKGROUND**[1]

On September 12, 2006, Claimants DeCarlos Duncan and Gilbert Duncan were stopped by a Lamar County Sheriff's Officer while they were traveling on Interstate 75. The officer approached the

---

[1] The Court restates, in large part, its findings of fact with respect to Claimant's earlier motion for summary judgment [Doc. 18].

vehicle and spoke with the driver, Gilbert Duncan. The officer explained that they had been stopped because he observed them swerving and driving very close to the white dividing line on the road, which could be indicative of driving under the influence. At this time, the officer observed that the passenger, DeCarlos Duncan, would not make eye contact with him. The officer then asked for the vehicle registration, and Gilbert Duncan stated that the vehicle was a rental car and was due to be returned the next day. While speaking to Gilbert Duncan, the officer detected an odor of marijuana coming from inside the vehicle and observed that Gilbert Duncan's voice and hands were shaking.

The officer then asked Gilbert Duncan to step outside of the vehicle and attempted to calm him down by making casual conversation. When asked where there were traveling, Gilbert Duncan hesitated and then explained that they were traveling from Valdosta, Georgia to Atlanta, Georgia to visit a relative for one week. As the officer continued to converse with Gilbert Duncan, he observed that Gilbert's shirt and pants were shaking.

The officer then approached DeCarlos Duncan and asked him for the vehicle's rental agreement. The rental agreement indicated that the vehicle was rented from Hertz Rental on September 12, 2006, and was due to be returned on September 14, 2006. When asked about their travels, DeCarlos Duncan stated that they were traveling from Tallahasse, Florida to Atlanta, Georgia, and that they would be returning home later that night after visiting a cousin.

Based on the conflicting stories, the odor of marijuana, and the nervous behavior observed, the officer asked and received consent to search the passenger compartment of the vehicle. The officer began the search and observed Gilbert and DeCarlos Duncan having an intense conversation. The officer then pulled the keys from the ignition and proceeded to the trunk of the vehicle. At that time, Gilbert Duncan told the officer to stop the search. Neither Gilbert nor DeCarlos consented to the search of the trunk. In response, the officer immediately stopped the search and called for a drug dog to make

a sweep of the vehicle.

Within minutes, a backup officer arrived with a drug-trained canine. The dog walked around the outside of the vehicle and made a positive alert. The Duncan brothers were then advised that there had, in fact, been a "hit" on the vehicle. Following the alert, the search was continued. A black nylon bag discovered in the trunk contained a large amount of United States currency wrapped with rubber bands, several empty half-gallon ziploc bags, and razor blades. Almost all the currency was in small denominations. An inventory revealed: 47 one-hundred dollar bills, 40 fifty dollar bills, 2,041 twenty dollar bills, 899 ten dollar bills, 599 five dollar bills, and 97 one dollar bills, for a total of $59,502.00. The drug dog also gave a positive alert on the currency. When asked who the money belonged to, DeCarlos Duncan stated that the money was his. DeCarlos Duncan also stated that the money was from a large settlement that he received from Social Security.

## **DISCUSSION**

The present case arises out of a civil forfeiture. It is not a criminal case. Nonetheless, the Fourth Amendment exclusionary rule applies, and as such, motions to suppress evidence are appropriate in civil forfeiture cases. U.S. v. $1,185,135.00 in U.S. Currency, 2008 WL 4601760 *1 (11th Cir., October 17, 2008) (slip copy); One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The requirements of the Fourth Amendment are additionally restated in statutory framework of the Civil Asset Forfeiture Reform Act of 2000, see 18 U.S.C. § 981(b)(2)(B), "which requires that seizures be made pursuant to a warrant or that seizures be based upon probable cause and pursuant to a lawful arrest or search." U.S. v. Eighty Thousand Six Hundred Thirty-Three Dollars, 512 F.Supp.2d 1196, 1202 (M.D.Ala. 2007).

Here, Claimant moves to suppress the $59,502.00 seized following the search of his vehicle.

Claimant asserts that the officer had neither consent nor probable cause to search the trunk of his vehicle. It is undisputed that the officer did have consent to search the passenger compartment of the vehicle. That search revealed nothing, other than the officer confirming the odor of marijuana. It is, likewise, undisputed that the brothers did not consent for the search of the trunk and that when the officer was so informed, he immediately discontinued his search and called for a drug dog to make a sweep of the vehicle. The Government has produced evidence that the drug dog did alert on the vehicle, and it is undisputed that Claimants were then advised that there was a "hit" after the dog alerted.

Claimants contend, however, that their Fourth Amendment rights were violated when the officer called in the drug-trained canine because there was not probable cause to do so. Inasmuch, Claimants argue that calling in the drug dog impermissibly extended the traffic stop. Clearly, under Terry v. Ohio, an officer's investigation of a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The stop must also be of a limited duration and generally "may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." U.S. v. Boyce, 351 F.3d 1102, 1105-06 (11th Cir. 2003); United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (citation omitted). As such, the delay in calling for a drug sniffing dog can violate a detainee's Fourth Amendment rights if the traffic stop is unnecessarily prolonged without articulable suspicion of other illegal activity. See Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005); U.S. v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004). Articulable suspicion necessary to justify the continued detention of a vehicle and call for a drug dog may be supported, however, where the driver and/or passenger exhibit extreme or unusual nervousness, where the occupants' travel plans appear suspicious or inconsistent, or where other evidence of illegal activity is observed. See Fuse,

4

391 F.3d at 929.

In the present case, the evidence before the Court shows that the officer, after lawfully stopping the vehicle, noted the smell of marijuana emanating from it. The recognizable smell of marijuana certainly gives rise to probable cause supporting a warrantless search. United States v. Lueck, 678 F.2d 895, 903 (11th Cir.1982); see also U.S. v. Griffin, 109 F.3d 706, 708 (11th Cir.1999) (holding that an officer has good reason justifying a warrantless search of a vehicle when he smells the strong odor of marijuana coming from the vehicle). That alone thus justified an extension of the traffic stop, call for the dog, and search of the trunk of the vehicle. See U.S. v. Garcia, 592 F.2d 259, 260 (5th Cir. 1979) (holding that reasonable suspicion was supplied by the smell of marijuana). The officer in this case also observed that the driver and the passenger were suspiciously nervous, and they gave conflicting statements about their travel plans. These facts also support a finding of reasonable suspicion to extend the detention and to search the vehicle. See United States v. Banshee, 91 F.3d 99, 101-02 (11th Cir.1996) (finding that inconsistent statements about destination of the trip, when combined with other suspicious behavior justified warrantless search); U.S. v. Sanchez, 408 F.Supp.2d 1255, 1259 (S.D. Fla. 2005) (inconsistent statements about destination would raise the suspicions of a reasonable officer).

Furthermore, there is no evidence that the detention while waiting for the drug dog to arrive was unreasonably long under the circumstances in this case. Claimants fail to cite to any evidence on this point. Claimant's deposition excerpts reveal, however, that they had to wait no more than ten or fifteen minutes before the backup officer arrived the with a canine. (Depo., G. Duncan p. 27). The evidence additionally shows that the stop was initiated on I-75. It may, thus, have reasonably taken the backup officer ten or fifteen minutes to reach the location of the stop, depending on his location at the time of the call. The evidence demonstrates that the officer in this case was also diligent in conducting the search in a timely fashion and calling for a drug dog shortly after having realized that he had articulable

suspicion of other illegal activity and immediately when he learned that he no longer had consent to search the vehicle. The Court finds, therefore, that Claimants have failed to show that the duration of this traffic stop was in itself unreasonable under the circumstances. Much longer terms of extension have been upheld as constitutional. See U.S. v. Simmons, 172 F.3d 775, 780 (11th Cir. 1999) (50-minute investigative stop was not excessive under the circumstances); United States v. Donnelly, 475 F.3d 946, 953-54 (8th Cir. 2007) (holding that a fifty-nine minute detention to wait for a drug dog was reasonable under the circumstances); U.S. v. Lyons, 486 F.3d 367, 372-73 (8th Cir. 2007) (holding that thirty-one minute delay was not unreasonable under the circumstances); United States v. Maltais, 403 F.3d 550, 557-58 (8th Cir.2005) (holding that a three-hour delay allowing a drug dog to reach the remote traffic stop location was acceptable); U.S. v. Davis, 430 F.3d 345, 355 (6th Cir. 2005) (holding that thirty-minute delay while the drug-sniffing dog was located was not unreasonable in light of the officers' reasonable suspicions). Here, the dog arrived in a reasonable and timely fashion under the circumstances, and as such, the extension of the traffic stop and subsequent dog sniff did not violate Claimants' rights under the Fourth Amendment.

As to the continued search of the vehicle, it is well-settled that "probable cause arises when a drug-trained canine alerts to drugs." United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993). Accordingly, the probable cause established by the drug dog's positive alert is generally sufficient to permit a search of the trunk of an automobile without a warrant. Of course, a dog sniff must be sufficiently reliable in order to establish probable cause. This reliability is generally present if the dog is "well-trained." Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005); United States v. Sentovich, 677 F.2d 834, 838 n. 8 (11th Cir.1982).

Here, Claimants do not challenge the reliability of the dog sniff. They merely claim that they did not see the dog alert. Claimants assert that they only saw the dog sniff the front right bumper of the

6

vehicle and state, in their current brief, that the dog "never barked or indicated the presence of drugs." Claimants, however, are not trained in the behaviors of drug-trained canines and are unqualified to testify as to whether the dog, in fact, alerted to the vehicle.  The only admissible evidence on that point is produced by the Government, which suggests that there was a positive alert.  This evidence is further supported by the dog's subsequent, unchallenged, positive response to the odor of narcotics on the money seized.  Based upon this evidence, the Court must find that there was probable cause to search the trunk of the vehicle.  See Caballes, 543 U.S. at 409 (dog sniff was sufficiently reliable to establish probable cause to conduct a full-blown search of the trunk).  Once the officer had probable cause to search the trunk, he also had probable cause to search all containers therein.  See U.S. v. Magluta, 418 F.3d 1166 (11th Cir. 2005) ("officers can search any container in an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime").  The currency found as a consequence of that search is thus admissible and not subject to suppression.

Claimant's Motion the Suppress is accordingly **DENIED**.


SO ORDERED this 5th day of March, 2009.


                                      S/ C. Ashley Royal
                                      C. ASHLEY ROYAL
                                      United States District Judge

jlr